UNITED STATES of America, Plaintiff,

v.

James J. WALKER, Kwang Suk
Campbell–Walker, and Jae
Yeol Ra, Defendants.

No. 96–CR–134–D.

United States District Court,
D. Colorado.

Nov. 1, 1996.

William D. Welch, Assistant U.S. Attorney,
Denver, CO, for Plaintiff.

Robert McAllister, Daniel W. Carr, Daniel T. Smith, Denver, CO, for Defendants.

## ORDER

DANIEL, Judge.

This matter is before the Court on Defendants' Motion for Return of Property pursuant to Fed.R.Crim.P. 41(e), filed July 26, 1996. This ruling is based upon the Court's review of the Motion, the Government's responses, filed August 30, 1996 and September 12, 1996, and the evidence and oral argument presented at the October 10, 1996 hearing. For the reasons discussed herein, I conclude that the Defendants' Motion should be GRANTED; that the seizure warrants issued by the Court on April 8, 1996, should be VOIDED; and that protective orders should now enter, under 21 U.S.C. § 853(e)(1)(A), for certain of the property items that were previously seized.

## I. FACTUAL BACKGROUND

On April 8, 1996, the grand jury returned an 86 count Indictment against the Defendants. The Indictment charges Defendants Walker and Campbell–Walker with one conspiracy count, two forfeiture counts, and 82 substantive counts. The Indictment charges Defendant Ra with one substantive count. More specifically, count one of the Indictment charges Defendants Walker and Campbell–Walker with conspiracy to use telephone facilities in interstate commerce to promote a business enterprise involving prostitution in violation of 18 U.S.C. §§ 371 and 1952(a)(3) and Colo.Rev.Stat. § 18–7–201. Counts two through 30 charge Walker and Campbell–Walker with violations of 18 U.S.C. § 1952(a)(3). Counts 31 through 71, 72 through 79, and 81 and 82 charge the Walkers with various money laundering violations pursuant to 18 U.S.C. §§ 1956 and 1957. Counts 83 and 84 charge the Walkers with making false statements on income tax returns in violation of 26 U.S.C. § 7206(1). Count 80 charges Ra with money laundering pursuant to 18 U.S.C. §§ 2 and 1957(a). Counts 85 and 86 charge Walker and Camp-

bell–Walker with two forfeiture counts based on 18 U.S.C. § 982.

On the day the Indictment was returned, I issued ten (10) *ex parte* seizure warrants. The warrants authorized seizure of seven bank accounts and three automobiles that were allegedly tied to a money laundering scheme associated with a prostitution ring run by Defendants. Most significantly, one of the seven warrants authorized seizure of Colorado National Bank account number 194312620942 (referred to as the Ra International Escrow Account) that held $485,284.31. I issued the warrants after reviewing two Affidavits sworn by FBI special Agent Theodore D. Faul,[1] the Indictment returned by the grand jury, and the text of 18 U.S.C. §§ 982, 1956, 1957, and 21 U.S.C. § 853. Based on my review and consideration of the information presented to me, I determined that probable cause existed that seven bank accounts and three automobiles would be subject to forfeiture upon conviction of the Defendants, and that seizure of the property was required to prevent its dissipation.

## II. LEGAL ISSUES TO BE DECIDED

In their Motion and at oral argument, Defendants advance three arguments in support of their position that they are entitled to a return of their seized property. First, Defendants argue that the Affidavits submitted to support the warrants do not establish probable cause to believe that the seized property will be subject to forfeiture if the Defendants are convicted. Second, Defendants contend that the warrants are invalid under the test promulgated by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), because Agent Faul's Affidavits contained recklessly false statements that were essential to this Court's finding of probable cause. Finally, Defendants claim that the warrants are invalid because they do not comply with the statutory requirements of 18 U.S.C. § 982 and 21 U.S.C. § 853.

---

1. Agent Faul swore and presented two Affidavits to the Court. One Affidavit supported the application for seizure warrants with regard to the seven bank accounts, the other Affidavit supported the application for seizure warrants with regard to the three automobiles.

### III. ANALYSIS

#### A. *Lack of Probable Cause Supporting the Warrants.*

18 U.S.C. § 982(a)(1) allows the government to seize the property of anyone convicted of, *inter alia,* 18 U.S.C. §§ 1956 or 1957. Additionally, § 982(b)(1) allows the government to seek a pre-trial forfeiture under the terms of 21 U.S.C. § 853. The text of § 853(f) allows the government to seek a pre-trial seizure if: 1) "there is probable cause to believe that the property to be seized would, in the event of a conviction, be subject to forfeiture," and 2) if a restraining order under § 853(e) would be insufficient to prevent dissipation of the property. *Id.*

Defendants first argue that the Affidavits do not set forth probable cause to believe that the seized property will be subject to forfeiture if the Defendants are convicted, which makes the warrants invalid. More specifically, Defendants argue that the Affidavits contain mere conclusory statements, not based on factual averments, alleging that Defendants violated 18 U.S.C. §§ 1956 and 1957. Defendants urge that the Affidavits deal primarily with the charged violations of 18 U.S.C. § 1952, and fail to create a probable cause nexus between the acts alleged in the Affidavits and violations of §§ 1956 and 1957.

In response, the Government counters that the facts elucidated in the Affidavits support a finding of probable cause that the property seized related to a money laundering scheme in violation of §§ 1956 & 1957. The Government relies on language from *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), where the Supreme Court recognized that the court issuing a warrant should make a "practical, common sense decision whether, given all the circumstances set forth in the affidavit" probable cause exists. *Id.* at 238, 103 S.Ct. at 2332. Moreover, the Government notes that the Second Circuit has held that when evaluating seizure warrants, "[a] finding of probable cause may be based on hearsay, even hear-say from confidential informants ... or circumstantial evidence ... particularly in cases involving bank accounts, money, or other fungible assets." *U.S. v. Daccarett,* 6 F.3d 37, 56 (2nd Cir.1993).

The Government also argues that the Indictment alone sufficiently established probable cause to allow issuance of the seizure warrants. Specifically, the Government states that the Indictment was attached to, and made part of, the Affidavits and Application for the seizure warrants that were presented to the Court. (Government's Response to Motion to Return Property, at p. 12, ¶ 13). The Tenth Circuit has held that "an indictment in a forfeiture case contains a determination by a grand jury not only that there is probable cause for immediate arrest but also that 'the described property is subject to forfeiture.'" *United States v. Nichols,* 841 F.2d 1485, 1505 (10th Cir.1988) (*citing United States v. Musson,* 802 F.2d 384, 386 (10th Cir.1986)).

■ I have closely examined the Affidavits and Indictment and find that in regard to six[2] of the seven bank accounts and with respect to the three automobiles, the Affidavits, coupled with the Indictment, established probable cause for issuance of the seizure warrants. Specifically, Agent Faul's Affidavits and the Indictment contain facts that—in accordance with the test elucidated in *Gates*—sufficiently tie six of the seven bank accounts and the three automobiles to the Defendants' alleged money laundering scheme. Moreover, the Indictment represents the grand jury's probable cause determination that six of the seven bank accounts and the automobiles are subject to forfeiture under *Nichols.*

■ In regard to the remaining bank account (known as the Ra International Escrow Account—Colorado National Bank # 194312620942), I conclude, based on facts disclosed to me at the hearing, that on April 8, 1996, when the applications for seizure warrants were presented to me, there was a

---

**2.** The six bank accounts are: (1) Pikes Peak National Bank # 685–135; (2) Colorado National Bank # 191500831422; (3) World Savings Bank # 005/06773461–6; (4) Colorado National Bank # 120408710016; (5) Colorado National Bank # 120409490949; (6) Colorado National Bank # 194311801071.

lack of probable cause to believe that the funds in that account were the fruits of a money laundering scheme. Until the week of April 3, 1996, the grand jury was not considering naming the Ra International Escrow Account as an account holding funds derived from a money laundering scheme. In fact, as late as April 3 or 4, the grand jury was circulating a draft Indictment that did not mention the Ra International Escrow Account. (Hearing Transcript at p. 94). However, during the week of April 3, 1996 the Government obtained information that Defendants had sold a shopping center that the Government had planned to file a *lis pendens* against and had deposited the proceeds of the sale into the Ra International Escrow Account. (Hearing Transcript at pp. 94–95). Therefore, in the days before the Indictment was issued, the draft Indictment was revised to include a passing reference that the funds in the Ra International Escrow Account were subject to forfeiture. (Hearing Transcript at pp. 94–95; Indictment p. 29 ¶ K). The Indictment, however, was not revised to include any facts tying the Ra International Escrow Account to the alleged money laundering scheme. Likewise, Agent Faul's Affidavits included no facts tying the Ra International Escrow account or the proceeds of the shopping center sale to the alleged money laundering scheme. (Hearing Transcript at pp. 96–97).

At the October 10, 1996 hearing, the Government conceded that the Indictment merely contained a passing reference to the Ra International Escrow Account and that Agent Faul's Affidavit did not reference the Ra International Escrow Account. (*See* Hearing Transcript at pp. 124–27, 140–42). However, the Government contended that the passing reference to the account in the Indictment was sufficient to establish probable cause. The Fourth Amendment does not allow me to justify my prior finding of probable cause on such a gossamer record.

21 U.S.C. § 853(f) allows the Government to seek a warrant of seizure "in the same manner as provided for a search warrant." The Tenth Circuit has held that "[p]robable cause to issue a search warrant exists only when an affidavit sets forth *sufficient facts*

that would lead a prudent person to believe there is a fair probability the contraband or evidence of a crime will be found...." *United States v. Pearce*, 41 F.3d 1516, 1516 (10th Cir.1994) (emphasis added). The Circuit Court went on to comment that "[i]n making the probable cause determination, the issuing judge may draw reasonable inferences from the material he receives...." *Id.* The documents presented to me by the Government on April 8, 1996 did not present any facts from which I could draw a reasonable inference that probable cause existed with regard to the Ra International Escrow Account.

Contrary to the Government's argument, the *Nichols* and *Musson* cases do not require me to blindly rely on the Indictment as establishing probable cause when the Indictment contains no facts that illustrate how the grand jury concluded that probable cause existed, the Government's affidavits were deficient, and the testimony elicited at the hearing revealed that mention of the bank account was incorporated into the Indictment at the eleventh hour. In both *Nichols*, 841 F.2d at 1505 and *Munson*, 802 F.2d at 386–87, the Tenth Circuit upheld protective orders of restraint that were issued merely on the strength of a grand jury Indictment. These cases are distinguishable from the case at bar because I issued warrants of seizure pursuant to 21 U.S.C. § 853(f) instead of protective orders of restraint pursuant to 21 U.S.C. § 853(e).

As mentioned above, issuance of 853(f) warrants is governed by the same Fourth Amendment standard that controls issuance of search warrants. In *United States v. Killip, et al.*, 819 F.2d 1542, 1550 (10th Cir. 1987), the Tenth Circuit cited favorably *United States v. Rubio*, 727 F.2d 786, 794–95 (9th Cir.1983), which held that it was improper for a magistrate to issue a search warrant merely on the basis of a grand jury indictment, instead requiring the magistrate to make an independent determination of whether the facts outlined in an affidavit supported a finding of probable cause. When I reviewed the Government's warrant applications on April 8, 1996 I did not—and based on the dearth of information in the documents presented for my review could not—make an

independent determination of probable cause with regard to the Ra International Escrow Account. Therefore, Defendants Fed. R.Crim.P. 41(e) Motion for Return of the funds in Colorado National Bank account # 194312620942 is GRANTED, and the government shall immediately return the seized funds to Defendants.

### B. *Franks Claim.*

■■■ Defendants' second argument is that all of the seizure warrants are constitutionally infirm. More specifically, Defendants argue that Agent Faul's Affidavits contain statements made with reckless disregard for their truth,[3] and those statements were essential in my determination that probable cause existed to issue the warrants. To determine the validity of the Defendants' claims, after making an initial determination that an evidentiary hearing was warranted, the Court held a *Franks* hearing. *See Franks*, 438 U.S. at 170–71, 98 S.Ct. at 2683–84. In *Franks*, the Supreme Court held that

in the event that at [a] hearing the allegation of perjury or reckless disregard is established by the Defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the warrant.

*Id.* at 156, 98 S.Ct. at 2676–77. The Tenth Circuit has clarified the rule, holding that "as long as the affidavit reflected what [the affiant] believed to be true, the warrant was properly issued." *United States v. Knapp*, 1 F.3d 1026, 1029 (10th Cir.1993).

After taking testimony at the October 10, 1996 hearing, I find that Defendants have not proven by a preponderance of the evidence that Agent Faul's statements were intentionally false or made in reckless disregard of the truth. I recognize that when Defendants' counsel cross-examined Agent Faul,

some minor inconsistencies were revealed involving Agent Faul's knowledge of the case and the language contained in his Affidavits. However, these inconsistencies merely revealed sloppy mistakes made by Agent Faul when he prepared his Affidavits. Moreover, I find that when Agent Faul swore his Affidavits, he believed that the statements made therein were true. Therefore, because the testimony and evidence does not support a finding that Agent Faul recklessly or intentionally misled this Court, Defendants' argument that the warrants are constitutionally infirm fails.

### C. *Compliance with 18 U.S.C. § 982 and 21 U.S.C. § 853.*

■ Defendants next argue that Agent Faul's Affidavits failed to reference 18 U.S.C. §§ 1956 or 1957, making the seizure warrants void on their face because they were issued by the Court without statutory authority. In response, the Government correctly notes that the face sheet of each application and Affidavit for seizure warrant contains an allegation that the property was subject to forfeiture under §§ 1956 and 1957, and in numbered paragraph twenty-two (22) of the bank account Affidavit, the affiant specifically alleges a violation of §§ 1956 and 1957 by Defendants. Moreover, numbered paragraph one (1) of both Affidavits states that Defendants had been indicted under §§ 1956 and 1957, making their property subject to forfeiture under 18 U.S.C. § 982. Therefore, the seizure warrants were not void on their face because they failed to allege a violation of the proper statute.

The Defendants finally argue that there was no finding by the Court that a protective order of restraint, pursuant to 21 U.S.C. § 853(e), was insufficient to prevent dissipation of the property. However, the bank account seizure Affidavit (¶ 21) and the automobile seizure Affidavit (¶ 15) explicitly state that Defendant James J. Walker told a confidential informant that Walker and Campbell–Walker were considering selling their cars,

---

**3.** At the October 10, 1996 hearing, Defendants' counsel made clear that Defendants had no evidence that Agent Faul's Affidavits contained intentionally false information, but counsel alleged that Agent Faul included information in the Affidavits that was in reckless disregard of the truth. (Hearing Transcript at pp. 27–28).

emptying their bank accounts, and fleeing the country in order to avoid prosecution. Based on these allegations, I concluded that, at the time the warrants were issued, a 21 U.S.C. § 853(e) protective order would be inadequate to protect the seized property from dissipation.

After hearing oral argument and taking testimony at the October 10, 1996 hearing, however, I find that it is unlikely that Defendants will liquidate their assets and flee the country. I note specifically that Agent Faul testified that the confidential informant never told Agent Faul that Defendants were seeking to avoid prosecution, nor did the informant tell Agent Faul that the Defendants were contemplating selling their cars and emptying their bank accounts. (Hearing Transcript at pp. 51–52, 84–85). Instead, these allegations that the Court assumed to be the statements of the confidential informant were actually Agent Faul's best guess at the course of action that Defendants would pursue if they were to flee the country.[4] Moreover, it is clear that, when considered individually, Defendants have not been frequent travelers overseas and do not pose a high risk to flee the country. (See Hearing Transcript at pp. 60–64). Therefore, I am modifying my earlier ruling and VOIDING the warrants issued on April 8, 1996. Thus, six of the seven bank accounts and the three automobiles should be returned immediately to Defendants. However, I want to be clear that I have reaffirmed my prior determination that there is probable cause to believe that the six bank accounts and the three automobiles will be subject to forfeiture if Defendants are convicted of the money laundering counts contained in the Indictment. Therefore, pursuant to 21 U.S.C. § 853(e)(1)(A), I ORDER that Defendants are restrained from withdrawing—or causing the withdrawal of—any funds from the six bank accounts listed in footnote number 2, and from selling or causing the title of the three automobiles to be encumbered in any manner.

4. The confusion regarding which information came from the confidential informant and which came from Agent Faul is a prime example of the sloppy manner in which Agent Faul's Affidavits were prepared. The Government needs to exercise more care in preparing Affidavits when they are presented to the Court in the context of a request for extraordinary *ex parte* relief.

## IV. CONCLUSION

For the reasons set out in detail above, it is hereby

ORDERED that Defendants' Motion for Return of Property is GRANTED. It is further

ORDERED that the Warrants of Seizure issued by this Court on April 8, 1996 are VOIDED and the seized bank accounts and cars should be immediately returned to Defendants. It is further

ORDERED that, pursuant to 21 U.S.C. § 853(e)(1)(A), Defendants are restrained from withdrawing—or causing the withdrawal of—any funds from the six bank accounts referenced in footnote number 2 of this Order, and are further restrained from selling or causing the title of the three returned automobiles to be encumbered in any manner.